STATE OF NORTH CAROLINA v. LANCE ALBERT SNYDER

No. 210PA95

(Filed 4 April 1996)

1. **Indictment, Information, and Criminal Pleadings § 36 (NCI4th)— driving while impaired—"street or highway"— amendment to "public vehicular area"**

    The trial court did not err in a prosecution for driving while impaired and being an habitual felon by granting the State's motion to amend the DWI indictment that defendant operated a motor vehicle on "a street or highway" to read "on a highway or public vehicular area" where defendant was stopped in a parking lot. This change was merely a refinement in the description of the type of *situs* on which defendant was driving while impaired rather than a change in an essential element of the offense. Furthermore, defendant cannot demonstrate how such a change prejudiced the defense on the merits. N.C.G.S. § 15A-923(e).

    **Am Jur 2d, Indictments and Informations §§ 166-187.**

    **Power of court to make or permit amendment of indictment with respect to allegations as to place. 14 ALR3d 1335.**

    **Comment Note.—Power of court to make or permit amendment of indictment. 17 ALR3d 1181.**

    **Power of court to make or permit amendment of indictment with respect to allegations as to nature of activity, happening, or circumstances. 17 ALR3d 1285.**

2. **Automobiles and Other Vechiles § 849 (NCI4)— driving while impaired—sufficiency of evidence—public vehicular area**

    The trial court did not err in a prosecution for driving while impaired and being an habitual felon by denying defendant's

STATE v. SNYDER

[343 N.C. 61 (1996)]

motion to dismiss for insufficient evidence that defendant was driving on a "street or highway," based on defendant having been arrested in a parking lot, where the trial court correctly allowed the State's motion to amend the indictment to add "public vehicular area."

**Am Jur 2d, Automobiles and Highway Traffic § 301.**

**Applicability, to operation of motor vehicle on private property, of legislation making drunken driving a criminal offense. 29 ALR3d 938.**

3. **Automobiles and Other Vehicles § 852 (NCI4th)— driving while impaired—peremptory instruction—parking lot as public vehicular area**

The trial court did not err in a prosecution for driving while impaired and being an habitual felon by giving a peremptory instruction that the parking lot where defendant was arrested was a public vehicular area as a matter of law where the club which the parking lot served was licensed by the state to serve alcohol to the guests of members as well as to the members themselves; the parking lot could generally be used as a thoroughfare by members of the general public who were trying to access either the club or the adjacent motel; there were no signs in the parking lot prohibiting the public from parking there and no signs posted stating that the parking lot was private property, nor were there any security or membership cards allowing members exclusive access to the parking lot; and members of the general public were free to use the parking lot while they checked in and out of the club and as an entrance and exit to the adjacent motel.

**Am Jur 2d, Automobiles and Highway Traffic § 301.**

**Applicability, to operation of motor vehicle on private property, of legislation making drunken driving a criminal offense. 29 ALR3d 938.**

Justice WEBB dissenting.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 118 N.C. App. 540, 455 S.E.2d 914 (1995), arresting judgments entered upon defendant's convictions of driving while impaired, habitual impaired driving, and being a habitual felon by Hudson, J., at the 15 November 1993 Criminal Session of Superior Court, Guilford County, and awarding defendant a new trial. Heard in the Supreme Court 13 December 1995.

**STATE v. SNYDER**

[343 N.C. 61 (1996)]

*Michael F. Easley, Attorney General, by Isaac T. Avery, III, Special Deputy Attorney General, for the State-appellant.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by J. Michael Smith, Assistant Appellate Defender, for defendant-appellee.*

ORR, Justice.

Defendant is appealing from his sixth conviction in the last ten years for impaired driving offenses. On 19 November 1993, defendant pled guilty to the offense of habitual impaired driving and was convicted by a jury of the offenses of driving while impaired (DWI) and being a habitual felon. The evidence presented at trial tended to show that on 11 May 1993, Officer Long of the Greensboro Police Department responded to a call describing a disturbance involving an individual, the defendant, with a knife at the Lost Dimensions Nightclub ("the Club"). When Long arrived at the Club, the Club manager told Long that the man causing the disturbance was driving a beige station wagon in the Club's parking lot. After locating and stopping the vehicle being driven by defendant, Long approached the vehicle and asked defendant to exit it. Long noticed that defendant needed to hold on to the vehicle to maintain his balance, that he smelled very strongly of alcohol, and that his speech was slurred. Long asked defendant to perform several field sobriety tests, which defendant failed. Long arrested the defendant for DWI.

Defendant was taken to the police department where Officer Cuthbertson administered further sobriety and physical tests to determine the extent of his impairment. After refusing to submit to a Breathalyzer test, defendant was taken to the magistrate's office. Based on their observations of defendant on 11 May 1993, Long and Cuthbertson formed the opinion that defendant had consumed sufficient alcohol to be "appreciably impaired." Subsequently, on 7 June 1993, defendant was indicted in two separate indictments for driving while impaired ("DWI") and habitual impaired driving ("the DWI indictment") and for being a habitual felon.

On 18 November 1993, after a mistrial was declared due to the illness of a juror, the case was tried before a second jury. During this new trial, the State presented the following evidence regarding the Club's parking lot on which defendant was observed driving: The Club is located on a service road at 510 Farragut Street off Randleman Road near Interstate 40. The Club parking lot opens up onto Farragut Street. Officer Long testified that the Club sits on a small hill with a

Budget Motel next door. There is a top-level asphalt parking lot for the Club that wraps around the back. He further testified as follows:

> The parking lot winds around the back, and then, there's a spot right behind the back [of the Club] by a dumpster that has enough room if you wanted to try and drive through there. Then, the parking lot wraps around and leads to the back, and this is the hotel. There's two separate buildings for the hotel, which are separated by an area. The parking lot winds around, and there's parking spots for the rooms there, and you can drive up . . . .

Mark Pulliam, general manager, testified that the Club is a private club and that the Club's policy restricts the use of the Club to members and their guests and only during the Club's open business hours; it is not open to the public. He further testified that Club members may not park in the lot overnight without special permission from Club management and that the Club does not permit patrons of the motel to use the Club's parking lot. On cross-examination, Pulliam testified that the Club enforces this policy by not permitting use of the Club's parking lot by nonmembers, by not permitting any loitering by the public, and by not allowing Club members to use the lot when they are not in the Club. On redirect examination, Pulliam testified that there is no membership card required to get into the parking lot. Finally, on recross examination, when asked by defense counsel whether a person who came into the parking but did not go into the Club would have to leave, Pulliam testified that nonmembers are allowed to park in the lot to "come in and check things out. . . . [E]verybody is welcome in the lobby."

At the close of the State's evidence, defendant, who offered no evidence, moved to dismiss all charges because the State failed to offer sufficient evidence that "defendant . . . unlawfully, willfully did operate a motor vehicle on a *street or highway* while subject to an impairing substance" as charged in the DWI indictment. (Emphasis added.) The State then moved to amend the DWI indictment to read "on a *highway or public vehicular area*." (Emphasis added.) Over defendant's objection, the trial court granted the State's motion to amend the DWI indictment and denied defendant's motion to dismiss. Subsequently, the jury found defendant guilty of all charges, and the trial court entered judgment against him and sentenced him to forty years in prison.

On appeal to the Court of Appeals, defendant contended that the trial court erred (1) by granting the State's motion to amend the DWI

indictment to include the allegation that defendant drove in a "public vehicular area," (2) by denying defendant's motion to dismiss for insufficient evidence to prove that defendant was driving on a "street or highway," and (3) by instructing the jury that the parking lot of the Club is a "public vehicular area" as a matter of law. The Court of Appeals arrested judgment and commitment on all charges, holding that the trial court erred in amending the DWI indictment and in failing to dismiss the charges stemming from the flawed indictment. The Court of Appeals further held that the trial court erred by instructing the jury that the Club's parking lot was a "public vehicular area" as a matter of law, as this removed an essential element of the offense charged from the jury's consideration.

On 27 July 1995, this Court granted discretionary review.

## I.

[1] The first issue before this Court is whether the trial court erred in granting the State's motion to amend the DWI indictment that defendant operated a motor vehicle on "a street or highway" to read "on a highway or public vehicular area." Defendant contends that such amendment was not proper because it substantially altered the charge contained in the bill of indictment, thereby violating defendant's right to an indictment by a grand jury as guaranteed by Article I, Section 22 of the North Carolina Constitution and pursuant to N.C.G.S. § 15A-641(a).

Jurisdiction to try an accused for a felony depends upon a valid bill of indictment guaranteed by Article I, Section 22 of the North Carolina Constitution. *State v. McBane*, 276 N.C. 60, 65, 170 S.E.2d 913, 916 (1969). An indictment charging a statutory offense must allege all of the essential elements of the offense. *State v. Crabtree*, 286 N.C. 541, 544, 212 S.E.2d 103, 105 (1975).

N.C.G.S. § 15A-923(e) provides that "[a] bill of indictment may not be amended." N.C.G.S. § 15A-923(e) (1988). This Court has interpreted the term "amendment" under N.C.G.S. § 15A-923(e) to mean "any change in the indictment which would substantially alter the charge set forth in the indictment." *State v. Price*, 310 N.C. 596, 598, 313 S.E.2d 556, 558 (1984). In *State v. Coker*, this Court stated that an

indictment or criminal charge is constitutionally sufficient if it apprises the defendant of the charge against him with enough certainty to enable him to prepare his defense and to protect him from subsequent prosecution for the same offense. The indict-

ment must also enable the court to know what judgment to pro-
nounce in the event of conviction.

*State v. Coker*, 312 N.C. 432, 434-35, 323 S.E.2d 343, 346 (1984).

> An indictment is sufficient in form for all intents and pur-
> poses if it expresses the charge in a plain, intelligible and explicit
> manner. N.C. Gen. Stat. § 15-153 (1983). It will not be quashed "by
> reasons of any informality or refinement, if[,] in the bill or pro-
> ceeding, sufficient matter appears to enable the court to proceed
> to judgment." [*State v. Russell*, 282 N.C. 240, 244, 192 S.E.2d 294,
> 296 (1972)]. It is generally held that the language in a statutorily
> prescribed form of criminal pleading is sufficient if the act or
> omission is clearly set forth so that a person of common under-
> standing may know what is intended. 41 Am. Jur. 2d, *Indictments
> and Informations* § 68 (1968).

*Coker*, 312 N.C. at 435, 323 S.E.2d at 346.

N.C.G.S. § 20-138.1(a) provides in pertinent part that "a person
commits the offense of impaired driving if he drives any vehicle upon
any highway, any street, or any public vehicular area within this State
. . . while under the influence of an impaired substance." N.C.G.S.
§ 20-138.1(a)(1) (1988). With regard to indictments in any prosecution
for impaired driving, the *situs* of the impaired driving offense is one
of the essential elements of the offense charged. *See State v. Bowen*,
67 N.C. App. 512, 515, 313 S.E.2d 196, 197, *appeal dismissed*, 312 N.C.
79, 320 S.E.2d 405 (1984). However, there simply has to be an al-
-legation of a *situs* that is included within the parameters of N.C.G.S.
§ 20-138.1(a) that defendant drove a vehicle on "*any* highway, *any*
street, or *any* public vehicular area." N.C.G.S. § 20-138.1(a) (empha-
sis added). Greater specificity is not required.

In the instant case, defendant contends that the DWI indictment
was fatally defective because the omission of the phrase "public
vehicular area" removed from the jury's consideration the *situs* of the
offense—an essential element of the DWI offense charged. He argues
that the subsequent amendment resulted in a substantial deviation
from the charge alleged and upon which defendant was tried.
Specifically, defendant argues that the term "street" in the DWI indict-
ment was referring to "street" as defined in N.C.G.S. § 20-4.01(46) as
a "highway." N.C.G.S. § 20-4.01(13) defines "highway" as "[t]he entire
width between property or right-of-way lines of every way or place of
whatever nature, when any part thereof is open to the use of the pub-

lic as a matter of right for the purposes of vehicular traffic." N.C.G.S. § 20-4.01(13) (1993). Because defendant was stopped in a parking lot, he contends that the original indictment was fatally flawed and that later amending the indictment to include "public vehicular area" was a substantial alteration of the charge.

N.C.G.S. § 20-4.01(32) defines "public vehicular area" in pertinent part as

[a]ny area within the State of North Carolina that is generally open to and used by the public for vehicular traffic, including by way of illustration and not limitation any drive, driveway, road, roadway, street, alley, or parking lot upon the grounds and premises of:

. . . .

b.   Any service station, drive-in theater, supermarket, store, restaurant, or office building, or *any other business*, residential, or municipal *establishment providing parking space for customers, patrons, or the public*; or

. . . .

The term "public vehicular area" shall not be construed to mean any private property not generally open to and used by the public.

N.C.G.S. § 20-4.01(32) (emphasis added).

We conclude that the change made in the DWI indictment is not one prohibited by N.C.G.S. § 15A-923(e). It does not alter the burden of proof or constitute a material change in a DWI indictment so as to vitiate the entire bill. This change merely represents one of form rather than substance under the circumstances of this case. It was merely a refinement in the description of the type of *situs* on which defendant was driving while impaired rather than a change in an essential element of the offense. We believe that the amendment to the indictment at issue was not an "indispensable allegation[] under our Constitution and general statutory provisions." *State v. Haigler*, 14 N.C. App. 501, 504, 188 S.E.2d 586, 589 (change to indictment changing description of stolen property, an essential element of the offense, from "scrap copper" to "scrap bronze" was not a prohibited amendment), *cert. denied*, 281 N.C. 625, 190 S.E.2d 468 (1972); *see also State v. Joyce*, 104 N.C. App. 558, 410 S.E.2d 516 (1991) (change made in the indictment from "knife" to "firearm" did not alter the bur-

den of proof or constitute a substantial change prohibited by N.C.G.S. § 15A-923(e)), *disc. rev. denied*, 331 N.C. 120, 414 S.E.2d 764 (1992); *State v. Bailey*, 97 N.C. App. 472, 389 S.E.2d 131 (1990) (change to indictment which stated victim's name as Pettress Cebron to correctly reflect the victim's name as Cebron Pettress was not a prohibited amendment). Defendant also cannot demonstrate how such a change has prejudiced the defense on the merits. This assignment of error is, therefore, overruled.

## II.

[2] In his next assignment of error, defendant contends that the trial court erred in denying his motion to dismiss for insufficiency of the evidence tending to prove that defendant was driving while impaired on a "street or highway" as the original DWI indictment charged. He asserts that all of the evidence at trial tended to prove that defendant never drove off the parking lot owned by the Club. However, having concluded that the trial court correctly allowed the State's motion to amend the DWI indictment because "public vehicular area" includes the term "street," we also conclude that the trial court did not err in denying defendant's motion to dismiss. Therefore, this assignment of error is also overruled.

## III.

[3] Defendant next assigns as error the trial court's peremptory instruction to the jury that as a *matter of law*, the Club parking lot was a "public vehicular area."

A trial court must instruct jurors on every element of the charged offense. As we previously stated, the *situs* of the impaired driving offense is one of the essential elements of the offense charged. *Bowen*, 67 N.C. App. at 515, 313 S.E.2d at 197. "[P]eremptory instructions are permissible only in rare instances in this State, where uncontradicted evidence establishes the element(s) beyond a reasonable doubt." *Id.*

In the case at bar, during the charge conference, the State requested that the trial court give a peremptory instruction on the element of the *situs* of the offense—"public vehicular area." Over defendant's objection, the trial court granted the State's request and instructed the jury that "the parking lot area of the Lost Dimensions Nightclub would be a public vehicular area under our law." As such, defendant contends that the trial court erred in peremptorily instructing the jury that the parking lot was a "public vehicular area" as a mat-

ter of law because there was conflicting evidence as to whether the parking lot was "generally open to and used by the public" as required by N.C.G.S. § 20-4.01(32). He further contends that the trial court erroneously withdrew an essential element of the crime from the jury's deliberations. We disagree and hold that the evidence supported a peremptory instruction that the Club's parking lot was a "public vehicular area" as a matter of law.

As previously stated, a "public vehicular area" is defined as "[a]ny area within the State of North Carolina that is generally open to and used by the public for vehicular traffic, *including* . . . any . . . parking lot upon the grounds and premises of . . . [a]*ny* . . . *business* . . . *establishment providing parking space for customers, patrons, or the public.*" N.C.G.S. § 20-4.01(32) (emphasis added). Thus, even if an establishment is cloaked in the robe of being a private club, it is still a "business establishment providing parking space for its customers, patrons, *or* the public" and cannot escape liability simply because a membership fee is required.

We also believe that the Court of Appeals' reliance on *Bowen*, 67 N.C. App. 512, 313 S.E.2d 196, is misplaced. There, the Court of Appeals held that the evidence presented regarding a condominium complex driveway did not support the trial court's conclusion that as a matter of law, the driveway was a "public vehicular area" within the meaning of N.C.G.S. § 20-4.01(32) because the evidence was "sharply conflicting." *Id.* at 514, 313 S.E.2d at 197. In *Bowen*, the evidence that the parking lot was a "public vehicular area" established that there was a "For Sale" sign which the Court of Appeals concluded "apparently invit[ed] in the public, and that there appeared to be no obstruction to public access." *Id.* at 514-15, 313 S.E.2d at 197. Evidence to the contrary indicated that "'No Trespassing' signs were posted, that there was no parking set aside for the public, and that the driveway had not been dedicated for public use." *Id.* at 515, 313 S.E.2d at 197.

In this case, unlike that in *Bowen*, the evidence establishes that the Club in this case is licensed by the State to serve alcohol to the guests of members as well as to the members themselves. Moreover, the Club's parking lot could generally be used as a thoroughfare by members of the general public—both Club members and nonmembers—who were trying to access either the Club or the motel. There were no signs posted in the Club's parking lot prohibiting the public from parking there and no signs posted stating that the parking lot was private property, nor were there any security or membership cards allowing members exclusive access to the parking lot. Also,

members of the general public were free to use the parking lot while they "[came] in and check[ed] out" the Club and as an entrance and exit to the adjacent motel.

Finally, in construing the statutory language, "'we are guided by the primary rule that the intent of the legislature controls.'" *State v. Carawan*, 80 N.C. App. 151, 153, 341 S.E.2d 96, 97 (quoting *State v. Spencer*, 276 N.C. 535, 546, 173 S.E.2d 765, 773 (1970)), *disc. rev. denied*, 317 N.C. 337, 346 S.E.2d 141 (1986). The legislature clearly intended to protect persons from the dangers posed by others who drive while they are impaired within any area where there is public vehicular traffic. While it appears that this Court has never decided a case in which N.C.G.S. § 20-4.01(32) was interpreted, cases decided by the Court of Appeals on the issue of whether a location was a "public vehicular area" support our holding in this case that the evidence was sufficient to support a peremptory instruction that the Club's parking lot is a "public vehicular area" as a matter of law. *See State v. Turner*, 117 N.C. App. 457, 451 S.E.2d 19 (1994) (privately maintained paved road in privately owned mobile home park); *Corns v. Hall*, 112 N.C. App. 232, 435 S.E.2d 88 (1993) (traffic lane between grocery store and parking lot); *State v. Mabe*, 85 N.C. App. 500, 355 S.E.2d 186 (wheelchair ramp in a motel parking lot), *disc. rev. denied*, 320 N.C. 516, 358 S.E.2d 527 (1987); *Carawan*, 80 N.C. App. 151, 341 S.E.2d 96 (park grounds used as temporary parking lot during special event). To hold otherwise would result in parking areas for private clubs selling alcoholic beverages being insulated from the drunk driving laws of our State while the parking lots of nonprivate establishments serving alcohol would not be. Such a distinction could not have been intended by the legislature.

Summarizing, the trial court did not err in allowing the State's motion to amend the DWI indictment because the change did not substantially alter the offense charged. Further, the trial court did not err in denying defendant's motion to dismiss. Finally, the trial court did not err in peremptorily instructing the jury that the Club's parking lot was a "public vehicular area" as a matter of law. Thus, the decision of the Court of Appeals is

REVERSED.

Justice WEBB dissenting.

I dissent. I believe it was error to allow the State to amend the indictment to allege the defendant was driving in a public vehicular

area. The majority says the *situs* of the impaired driving offense is one of the essential elements of the offense charged. Nevertheless, the majority says, it was not error to allow this amendment because it was alleged in the indictment that the offense occurred on a highway which was a *situs* included within the parameters of N.C.G.S. § 20-138.1(a). "It was merely a refinement in the description of the type of *situs* on which defendant was driving while impaired rather than a change in an essential element of the offense," says the majority. *State v. Snyder*, 343 N.C. 61, 67, 468 S.E.2d 221, 225 (1996)

I do not believe this amendment to the indictment was merely a refinement in the description of the *situs* alleged in the indictment. Adding the words "public vehicular area" to the indictment changed one of the elements in the offense charged and substantially altered the charge. It violated Article I, Section 22 of the North Carolina Constitution and N.C.G.S. § 15A-923(e) (1988).

I vote to affirm the Court of Appeals.